Filed 3/9/23  In re C.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.P., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E080061 |
| Plaintiff and Respondent, | (Super.Ct.No. J288512) |
| v. | OPINION |
| B.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Reversed with directions.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Tiffany Lok, Deputy County Counsel for Plaintiff and Respondent.

The juvenile court terminated the parental rights of defendant and appellant B.C. (Mother) to her son, C.P. (Minor). Mother contends the juvenile court erred by (1) not applying the parent-child bond exception to termination (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i));[1] and (2) finding that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) does not apply because necessary records from plaintiff and respondent San Bernardino Children and Family Services (the Department) are missing. We conditionally reverse the judgment with directions.

## FACTUAL AND PROCEDURAL HISTORY

Minor is male and was born in March 2021. Mother stopped abusing heroin and methamphetamine when she learned she was approximately three months pregnant. In order to quit heroin, Mother took methadone on a daily basis. While a newborn at the hospital, Minor displayed "signs of withdrawals, high pitch cries, tremors and sneezing." When the Department removed Minor from Mother's care, he was approximately 10 days old and remained hospitalized in the neonatal intensive care unit. Mother visited Minor in the hospital; Minor remained hospitalized through early April. After being discharged from the hospital, Minor was placed in Mother's sister's (Aunt) home.

---

[1] All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

2

At the jurisdiction hearing, on May 11, 2021, the juvenile court found that Mother "has a history of and current substance abuse, which impairs and/or limits her ability to provide adequate care and supervision for" Minor (§ 300, subd. (b).)[2] The juvenile court granted Mother supervised visitation with Minor once per week for two hours, and that visitation order remained the same throughout the case in the juvenile court.

Minor was attached to Aunt, and Aunt wanted to adopt Minor. At the hearing regarding the termination of her parental rights, Mother testified, "[H]e's bonded to her," referring to Minor and Aunt. Mother repeated, "I understand she's bonded—he's bonded with her." Mother admitted that, since Minor's birth, she has not been Minor's primary caregiver. The juvenile court terminated Mother's parental rights.

## DISCUSSION

### A.    PARENT-CHILD BOND EXCEPTION

Mother contends the juvenile court erred by not applying the parent-child bond exception. (§ 366.26, subd. (c)(1)(B)(i).)

When reunification efforts have failed, there is a statutory preference for adoption. However, in exceptional circumstances, the juvenile court will not terminate parental rights when doing so would be detrimental to the child. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1150; § 366.26, subd. (c)(1).) The parent-child bond exception

---

[2] We omit the jurisdiction findings that involved C.P.1, Minor's presumed father, because he was killed by Mother's ex-boyfriend during the course of this dependency case.

requires a parent to establish, by a preponderance of the evidence, that the parent regularly visited the child, "that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child." (*In re Caden C.* (2021) 11 Cal.5th 614, 629-630 (*Caden C.*)); § 366.26, subd. (c)(1)(B)(i).)

The juvenile court found that Mother consistently visited Minor. Because that finding was in Mother's favor, and Mother is the appellant, we will not review that decision at this time. Thus, we move to the factor of benefit.

Our Supreme Court held the substantial evidence standard applies to this issue. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-640.) However, Mother bore the burden of proof in the juvenile court in regard to the parent-child relationship exception (*id.* at pp. 636-637), and Mother is now appealing. As a result, the issue is not exactly one of substantial evidence, but of Mother's failure to meet her burden of proof. Therefore, we examine whether Mother presented uncontradicted evidence such that the juvenile court was compelled to find in her favor. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, overruled on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.)

In terms of benefit, Mother needed to present evidence "that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) Aunt supervised Mother's visits with Minor. Aunt described the visits as "[M]other having very little interaction with the child as . . .

[M]other feeds him snacks and entertains him with her phone during visits. . . . [M]other has very little interaction with the child as far as playing with him. After visits with [M]other, the child goes back to [Aunt] and has very little reaction to . . . [M]other leaving the visit." The lack of interaction and reaction indicate that Minor did not have a substantial, positive, emotional attachment to Mother. Accordingly, the evidence did not compel a finding in favor of Mother on the benefit prong. The juvenile court did not err.

B.  ICWA

1.  *PROCEDURAL HISTORY*

On May 5, 2022, a Department social worker spoke with Mother's father (Grandfather), and Grandfather said that his maternal grandmother, i.e., Minor's great-great-grandmother, "might have been a member of the Cahuilla tribe from the Palm Springs area." On May 11, 2022, a Department social "worker contacted the Agua Caliente Band of Cahuilla Indians office . . . and inquired about Native American ancestry for the maternal grandfather's side of the family. Th[e social] worker was informed that they did not have registry information for any of the names provided."

On August 15, 2022, a Department social worker "contacted tribal services by certified letter . . . regarding ICWA for the following tribes: [¶] Augustine Band of Cahuilla Indians [¶] Los Coyotes Band of Cahuilla and Cuperno Indians [¶] Ramona Band of Cahuilla [¶] Santa Rosa Band of Cahuilla [and] [¶] Torres Martinez Desert Cahuilla." The Department social worker spoke to representatives of the Santa Rosa Band of Cahuilla Indians and the Los Coyotes Band of Cahuilla and Cuperno Indians,

"and was advised that no record[s were] found for the relative names provided or the child."

On September 26, 2022, the Department sent letters, via certified mail, to the Torres Martinez Desert Cahuilla Indians, the Ramona Band of Cahuilla Indians, and the Augustine Band of Cahuilla Indians. None of the tribes or bands responded. The Department's letter read, in relevant part, "I am writing you to request information about a child's possible eligibility for registry. The child and family's information in [*sic*] included on the enclosed ICWA 030." There is not an ICWA-030 form included in the record. On October 25, 2022, the juvenile court found that "the Department has complied with its duty of inquiry and there is no reason to know or reason to believe that the child is an Indian child," and therefore, "ICWA does not apply."

This court granted Mother's motion to augment the clerk's transcript with the ICWA-030 forms and letters that were allegedly sent to the tribes. A deputy clerk of the juvenile court submitted an affidavit reflecting the letters and ICWA-030 forms "are not located in the court file," and therefore the juvenile court could not augment the clerk's transcript.

2.    *ANALYSIS*

Mother asserts the juvenile court erred by finding that ICWA did not apply when it is unknown what information, if any, the Department shared with the tribes regarding Minor's family due to the missing ICWA-030 forms.

6

"There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) Such information can come from "a member of the child's extended family." (§ 224.2, subd (d)(1).) In the instant case, Grandfather suggested that Minor may have Native American ancestry. Therefore, there was reason to believe that Minor is an Indian child.

"When there is reason to believe the child is an Indian child, further inquiry is necessary to help the court, social worker, or probation officer determine whether there is reason to know a child is an Indian child. Further inquiry includes . . . [¶] . . . [¶] [c]ontacting the tribe or tribes . . . regarding the child's membership, citizenship status, or eligibility. . . . Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C).) We do not know what information the tribes identified as necessary, but the Department allegedly sent the tribes information on an ICWA-030 form, so we presume the ICWA-030 form provides the type of information that the tribes require.

Because the ICWA-030 forms are not in the record nor the juvenile court's file, there are no means of determining what, if any, information the Department shared with the tribes. In other words, one cannot know if the Department sent information to the tribes, and if it did, what information was provided. As a result, one cannot evaluate the Department's further inquiry into Minor possibly being an Indian child.

7

The Department asserts that the missing ICWA-030 forms are of no consequence because "[f]ormal notice to the tribes was never triggered." The Department is correct that ICWA-030 forms are designed for the notice stage of the proceedings. (Cal. Rules of Court, rule 5.481(c)(1).) After all, the title of the ICWA-030 form is "Notice of Child Custody Proceeding for Indian Child." Nevertheless, the Department used the ICWA-030 form to share information with the tribes during the further inquiry phase of the proceedings. As a result, the ICWA-030 forms sent to the tribes are an important part of evaluating whether the Department conducted an adequate further inquiry.

The Department contends the error is harmless because "[s]ubstantial evidence in the record supports the finding that [the Department] properly and adequately fulfilled their duty of inquiry and there was no reason to know or believe that [Minor] was an Indian child."

"[T]he burden of making an adequate record demonstrating the court's and the [Department's] efforts to comply with ICWA's inquiry and notice requirements must fall squarely and affirmatively on the [juvenile] court and the [Department]. In the absence of an appellate record affirmatively showing the [juvenile] court's and the [Department]'s efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply. Instead, as a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484.) We apply that general

8

rule in this case. We conditionally reverse the judgment so the juvenile court and the Department can fulfill their ICWA duties.

## DISPOSITION

The order terminating parental rights under section 366.26 is conditionally reversed and the matter is remanded to the juvenile court with directions that within 10 court days of the remittitur the Department demonstrate whether it sent ICWA-030 forms to the tribes and whether the forms were sufficiently complete. If the juvenile court determines the Department's inquiry satisfied its affirmative duty to investigate, then the juvenile court shall reinstate its section 366.26 orders.

If the juvenile court concludes the Department's investigation was insufficient, then the juvenile court shall order, pursuant to ICWA and California Rules of Court rules 5.481 and 5.482, that within 30 days of the remittitur that the Department perform a diligent inquiry into Minor's alleged Indian ancestry by providing the tribes with relevant information about Minor and the case. If adequate additional investigation is performed but yields no information about Minor being an Indian child, then the juvenile court shall reinstate its section 366.26 orders. If, as a result of that inquiry, new information is obtained indicating that Minor is or may be an Indian child, then the juvenile court shall order the Department to provide the relevant tribe(s) and the Bureau of Indian Affairs with proper notice of the pending proceedings.

In the event no tribe responds indicating Minor is an Indian child, or if no tribe seeks to intervene, the juvenile court shall reinstate its section 366.26 orders. If a tribe determines that Minor is an Indian child and seeks to intervene in the proceedings, then

9

the juvenile court shall vacate its prior orders and conduct all proceedings in accordance with ICWA and related California laws. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 409.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

McKINSTER

Acting P. J.

RAPHAEL

J.

10